**FRENCH HOSPITAL MEDICAL CENTER, Plaintiff,**

**v.**

**Donna SHALALA, Secretary of the Department of Health and Human Services, Defendant.**

No. C–92–3527 EFL.

United States District Court, N.D. California.

Dec. 28, 1993.

Timothy P. Blanchard, McDermott, Will & Emery, Los Angeles, CA, for plaintiff.

George C. Stoll, Asst. U.S. Atty., San Francisco, CA, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LYNCH, District Judge.

### I. *Introduction*

This action arises under Title XVIII of the Social Security Act, as amended 42 U.S.C. § 1395 et seq. ("Medicare statute"). Plaintiff, French Hospital Medical Center, seeks judicial review of a final administrative decision rendered by the Acting Deputy Administrator of the Health Care Financing Administration ("HCFA") on behalf of the Secretary of Health and Human Services. The

decision at issue affirmed the denial of jurisdiction by the Medicare Provider Reimbursement Review Board ("PRRB" or "Board") of plaintiff's appeal from a reopening of its notice of program reimbursement for the fiscal year ending December 31, 1982. The parties have cross-motions for summary judgment before the Court.

### II. *Background*

#### A. *Framework of Medicare Reimbursement*

Under the Medicare program, in order to be reimbursed for medical services provided to eligible Medicare patients, providers such as French Hospital are required to file an annual cost report that sets forth their costs for the fiscal year in question. *See* 42 C.F.R. §§ 413.20(b), 413.24(f). Once the provider submits a cost report, the intermediary—typically a health insurance company—audits the report and notifies the provider of its total program reimbursement through a Notice of Amount of Medicare Program Reimbursement ("NPR"). *See* 42 C.F.R. § 405.-1803.

During the periods at issue in this case, Medicare paid the lower of a provider's "customary charges" or the "reasonable cost" of providing services to Medicare beneficiaries. 42 U.S.C. §§ 1395f(b)(1), 1395x(v)(1)(A). The hospital cost limits included a wage index component and the covered days of care adjustment factor. 46 Fed.Reg. 33,637, 33,638–40 (June 30, 1981).[1] Reasonable costs are determined based upon approved cost finding methodologies. *See* 42 C.F.R. § 413.24.

If the provider is dissatisfied with the amount of program reimbursement, it has several options. First, under the circumstances set forth in 42 C.F.R. § 413.30(f), a provider may request an exception from the imposition of routine cost limits ("RCL") within 180 days of the issuance of the NPR. 42 C.F.R. 413.30(c), (f). The intermediary then makes a recommendation to HCFA as to whether to grant the request for an excep-

---

1. The wage index component is designed to reflect area-by-area variations in hospital labor costs. 46 Fed.Reg. at 33,638–39. The covered days of care adjustment factor provides an auto-matic upward adjustment to the cost limits in states with below average Medicare utilization. *Id.* at 33,639–40.

tion. 42 C.F.R. § 413.30(c). The intermediary then notifies the provider of HCFA's decision. *Id.*[2] HCFA's decision is then subject to administrative and judicial review under subpart R of part 405 of the Medicare regulations (42 C.F.R. § 405.1801 et seq.). *Id.*

Second, if the provider is dissatisfied with it's final determination of the total program reimbursement or the disposition of its request for an adjustment or exception to the RCL, the provider may appeal the intermediary's determination to the Board. *See* 42 U.S.C. § 1395oo (a); 42 C.F.R. §§ 405.1835, 413.30(c). The jurisdictional prerequisites for a hearing before the PRRB are: (1) dissatisfaction with a final determination as to the amount of total Medicare program reimbursement; (2) an amount in controversy of at least $10,000; and (3) the filing of a request for a hearing within 180 days of the fiscal intermediary's final determination. 42 U.S.C. § 1395oo (a)(1)–(3).[3]

The decision of the PRRB becomes final unless the Secretary, through review by the Administrator or the Deputy Administrator of HCFA, reverses, affirms, or modifies the PRRB's decision. 42 U.S.C. § 1395oo (f)(1); 42 C.F.R. § 405.1871(b). A provider has the right to judicial review of any final decision of the PRRB, or any reversal, affirmance, or modification by the Secretary. 42 U.S.C. § 1395oo (f); 42 C.F.R. § 405.1877.

Lastly, the provider has the option of requesting expedited judicial review ("EJR") of any issue of law the Board determines it does not have the authority to decide. *See* 42 U.S.C. § 1395oo (f)(1); 42 C.F.R. § 405.1842. If the Board determines that it is without authority to decide an issue, that decision is not reviewable by the HCFA administrator. 42 C.F.R. § 405.1875(a).

2. If a provider has submitted a cost limit exception request, the deadline for Board review may be extended until HCFA completes its review of the exception request. 42 C.F.R. § 413.30(c).

3. The regulations further require that the provider file a written request which delineates the aspects of the determination with which the provider is dissatisfied. *See* 42 C.F.R. § 405.1841.

4. 42 C.F.R. § 405.1889 states:

### B. *Reopening of the NPR*

Under the regulations, a provider's cost report may be reopened by the intermediary, on its own initiative or at the request of the provider to revise any matter in issue, provided the request of the provider occurs within three years of the date of the NPR. 42 C.F.R. § 405.1885. Where a revision is made in a provider's cost report to the amount of Medicare reimbursement, such revision is considered a separate and distinct intermediary determination which may be appealed by the provider to the PRRB, provided that the jurisdictional requirements mentioned above are met. 42 C.F.R. § 405.-1889.[4]

### C. *Procedural History of this Case*

In the case before the Court, Blue Cross Blue Shield ("the Intermediary") issued the original NPR for fiscal year ending ("FYE") December 31, 1982, on May 15, 1984 ("original NPR"). Administrative Record 43–46 ("A.R."). The original NPR reflected the application of the routine cost limits to the Hospital's Medicare Reimbursement. Complaint ¶ 15. The Hospital did not appeal the original NPR. *Id.*

The Intermediary informed the Hospital on March 31, 1989, that it was revising the Hospital's cost report for FYE 1982 in order to treat malpractice insurance costs as an administrative and general expense. Comp. ¶ 16; A.R. 270. This reopening was undertaken pursuant the HCFA Ruling 89–1 which required recalculation of malpractice reimbursements. Comp. ¶ 16; A.R. 270.

The Intermediary then issued a revised NPR ("first revised NPR") on November 9, 1990, in which it increased the total Medicare reimbursement to the Hospital by $24,644. A.R. 275. In calculating the Hospital's additional malpractice insurance reimbursement,

Where a revision is made in a determination or decision on the amount of program reimbursement after such determination or decision has been reopened as provided in § 405.1885, such revision shall be considered a separate and distinct determination or decision to which the provisions of §§ 405.1811, 405.1835, 405.1875 and 405.1877 are applicable.

the Intermediary applied the routine cost limits to the provider's additional reimbursement, which reduced the Hospital's reimbursed malpractice costs (and total costs) by $29,526. *See* Comp. ¶ 17; Plaintiff's Memo. of P & A in Support of Motion for Summary Judgment, p. 9 (correcting amount in complaint).

By letter dated December 5, 1990, the Hospital requested a hearing before the PRRB, seeking an exception to and challenging the RCL on three bases: (1) the RCL database did not include malpractice costs; (2) the wage index used by HCFA was incorrect; and (3) the RCL incorporated an incorrect adjustment for covered days of care for California hospitals. A.R. 268. By letter dated December 20, 1990, the Hospital requested the Intermediary grant an exception to the cost limits due to the three RCL issues. A.R. 213.

In response to the December 20, 1990, letter, the Intermediary, by letter dated January 10, 1991, denied the Hospital's request for an exception based on the alleged incorrect wage index and covered days of care factor. A.R. 209–10. The Intermediary stated:

> It should be noted that the circumstances that impacted French Hospital's routine costs thereby causing costs to exceed the routine cost limit were present in the cost reporting period ending December 31, 1982 and are not a result of the reopening. Therefore, your request for an exception to the routine cost limit was received beyond the 180 day time frame and must be denied.
>
> The Malpractice reopenings that occurred as a result of the HCFA Ruling 89–1 ruling [sic] have been granted special consideration. Accordingly, we have been instructed by HCFA to make payments to those providers for the additional amount due them as a result of the Malpractice reopening without regard to its impact on the routine cost limit. (A.R. 209)

By letter dated January 24, 1991, the PRRB concluded that the Hospital had not sought and obtained an exception to the RCL from the Intermediary and so dismissed the Hospital's appeal. *See* A.R. 208. However, upon being advised by letter dated February 8, 1991, that the Intermediary had partially denied the exception, the PRRB reinstated the appeal and granted the request for a hearing in a letter dated February 20, 1991. A.R. 207. The PRRB also requested submission of a list of issues for appeal. *Id.*

On February 28, 1991, the Intermediary issued a second revised NPR which stated that the result of excluding malpractice costs from the routine cost limits was to increase the Hospital's reimbursement by $39,823. A.R. 156.[5] The Hospital then submitted a joint list of issues to the PRRB on April 8, 1991. A.R. 195. Rather than framing the issue as an appeal of the denial of its request for an exception, the Hospital listed the issue in dispute as whether the Intermediary's computation of the RCL was correct due to three factors—the incorporation of the 1979 Malpractice Rule, the wage index, and the covered days of care adjustment. A.R. 195.

In a letter dated July 26, 1991, the Hospital requested expedited judicial review ("EJR") of the routine cost limit issue. The request for EJR was based on the dispute concerning the validity of the wage index and the covered days of care adjustment. No mention was made of the inclusion of malpractice costs in the RCL or the exception request to the RCL. A.R. 182–184.

The Board, in response to the Hospital's request for EJR, requested additional information from the Hospital in a letter dated August 7, 1991. The Board asked the Hospital to address whether the Board had jurisdiction over the appeal of the wage index and covered days of care issues. A.R. 180. The Board also requested clarification of whether the Hospital was appealing the denial of the RCL exception request.[6]

---

**5.** Though the balance due the Hospital is stated in the second revised NPR to be $39,823, the Hospital states in its brief that the second revised NPR increased the reimbursement by $29,526. Plaintiff's Memorandum of Points and Authori-

ties in Support of Plaintiff's Motion for Summary Judgment, p. 10.

**6.** The Board also requested clarification concerning the Part B Coinsurance and Non Approved

The Hospital responded in a letter dated August 28, 1991, which enclosed its jurisdictional brief. A.R. 103.[7] On September 24, 1991, the Board again requested by letter that the Hospital clarify whether it was appealing the wage index, covered days of care, and inclusion of inaccurate malpractice costs, or whether in addition it was appealing the denial of the exception request. A.R. 102.[8]

On October 3, 1991, the Hospital again responded, stating

With respect to the Routine Cost Limit (RCL) issue, we are appealing merely the incorporation of an incorrect wage index and an inadequate adjustment for "covered days of care" in the computation of the RCL. As indicated in our jurisdictional brief of August 28, 1991, the inclusion of inaccurate malpractice insurance costs has been resolved based on HCFAR 89–1. The Intermediary issued a Revised Notice of Program Reimbursement (NPR) on February 28, 1991 to correct the treatment of malpractice insurance cost. A.R. 98.

On April 22, 1992, the Board held it lacked jurisdiction to grant the Hospital's EJR request because there were no audit adjustments from the revised NPR under dispute. A.R. 37. The Board found that no audit adjustments from the revised NPR were in dispute. *Id.* The Board interpreted the reopening regulation as only reopening those parts of the cost report adjusted by the revised NPR and found only those adjustments could be appealed. *Id.* The Board therefore determined it lacked jurisdiction over the validity of the Routine Cost Limits and denied the request for EJR. *Id.*[9]

On May 4, 1992, the Hospital requested review of the PRRB decision by the HCFA Administrator. A.R. 15. The Hospital disagreed with the Board's contention that the RCL issue was not addressed in the revised NPR. The Hospital stated:

The Provider was satisfied with the treatment of the malpractice insurance cost with respect to the RCL. Therefore, the Provider did *not* address this component of the RCL when if filed its Request for a Board Hearing on August 21, 1991. However, the Provider was *not* satisfied with the determination of the RCL with respect to the wage index component and the "covered days of care" adjustment component. This dissatisfaction with the determination resulted in the filing of the Request for Board Hearing on August 21, 1991. A.R. 16.

The Hospital claimed that in order to address malpractice insurance cost, the Intermediary had to address the RCL issue because malpractice insurance cost is a vital component in the computation of the RCL. A.R. 16.

In a decision rendered April 22, 1992, the Acting Deputy Administrator of HCFA reviewed the issue of whether the Board had jurisdiction to hear the Hospital's appeal requesting EJR of the routine cost limit components involving the wage index and covered days of care. A.R. 2.[10] The HCFA Administrator interpreted the reopening regulation 42 C.F.R. § 405.1889 as providing for appeal only of items revised in the NPR. A.R. 7. The Administrator concluded:

In this case, the revised NPR was limited to the treatment of malpractice insurance

Interns and Residents issue which is not relevant to the issues before this Court. A.R. 180.

7. In addition, by letter dated August 21, 1991, the Hospital appealed the second revised NPR claiming it was entitled to an exception to the RCL because of the inaccurate wage index and covered days of care component. A.R. 173, 114.

8. The Hospital was also requested to clarify whether it was pursuing appeal of the Part B Coinsurance and Non–Approved Intern and Residents issue.

9. The Board also found it lacked jurisdiction over the Part B Co-insurance and Interns and Residents in Non–Approved Programs–Medicare

Patient days issue. The Board noted that it might have jurisdiction to decide whether the Intermediary's refusal to grant the exception request was proper. A.R. 38. The Board instructed the Hospital to submit a position paper on the exception issue within 30 days. A.R. 38 However there is no evidence the Hospital did so.

10. The Acting Deputy Administrator noted that the Hospital had both requested an exception pursuant 42 C.F.R. § 413.30 and appealed the revised NPR directly. A.R. 5, fn. 2. The Administrator's review was limited to the Hospital's appeal of the revised NPR. *Id.*

as an administrative and general expense as required by the application of HCFA Ruling 89–1. The RCL components with which the Provider expressed dissatisfaction, i.e., the wage index and covered days of care issues, were neither affected by this adjustment, nor did this adjustment change the amount in dispute. Furthermore, even generally, the alleged "amount of loss" under the RCL was not increased pursuant to the reopening and issuance of this revised NPR. Accordingly, in this case, the Provider filed its request for a hearing on these issues more than 180 days after the date of its original NPR. Further, as the wage index and covered days of care issues were not adjusted in the revised NPR, the Provider could not appeal those issues pursuant to the revised NPR. A.R. 7.

Plaintiff filed this action requesting review of the Administrator's decision on August 28, 1992.

## III. *Discussion*

The issue before the Court on cross-motions for summary judgment is whether the Acting Deputy Administrator's denial of jurisdiction over the wage index and covered days of care issues was arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by the evidence as a whole. *See* 5 U.S.C. § 706(2).

The Hospital asserts two bases for PRRB jurisdiction over its appeal: (1) the appeal of the RCL issues in the first revised NPR, and (2) the appeal of the denial of its request for an exception to the RCL in the first revised NPR. The Secretary responds by arguing that (1) the RCL issues were not appealable from the first revised NPR since the sole issue that was reopened was malpractice costs and (2) the Hospital abandoned its appeal of the denial of its exception.

Both the arguments for and against PRRB jurisdiction require the Court to interpret the scope of the reopening regulations and the appeal rights which arise with the reopening of an NPR. Therefore, as a threshold matter, the Court discusses the scope of the reopening regulations. The Court then addresses the scope of the appeal rights that

arose from the revised NPR in the instant case. The Court both upholds the affirmance of the PRRB's denial of jurisdiction over the appeal from the revised NPR, as well as the Administrator's determination that the Hospital did not pursue its appeal of HCFA's denial of the Hospital's exception request. Therefore, the Court affirms the Administrator's decision to affirm the Board's denial of jurisdiction in this case.

### A. *Standard of Review*

■ This action arises under 42 U.S.C. § 1395oo (f)(1) which provides for judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary. The Secretary's decision must be reversed if it is "arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence on the record taken as a whole." *Vista Hill Found., Inc. v. Heckler*, 767 F.2d 556, 559 (9th Cir.1985) (citations omitted); *see also* 5 U.S.C. § 706(2).

■ The Court must give deference to the Secretary's interpretation of her own regulations " 'where [s]he has expertise in the substantive area involved and where the regulations were promulgated pursuant to congressional authorization.' However, '[t]he interpretation must sensibly conform to the purpose and wording of the regulations.' " *Vista Hill*, 767 F.2d at 559 (citations omitted). The Court should not uphold the interpretation if it produces a result inconsistent with the statute itself and other regulations. *Id.* at 560.

### B. *Scope of the Reopening Regulations*

■ The first issue to be addressed is the scope of the reopening regulations. The Hospital argues that the revision of an NPR permits the appeal of any aspect of the NPR, whereas the Secretary contends that the reopening regulations permit only issue-specific revisions and appeals. The Court agrees with the Secretary that the reopening regulations provide for an issue-specific revision of a notice of program reimbursement, and that only those issues that are revised are appealable.

First, the reopening regulation itself only purports to reopen an NPR "with respect to findings on matters at issue" in order "to revise any matter in issue." 42 C.F.R. § 405.1885(a). The regulation states:

A determination of an intermediary ... *may be reopened with respect to findings on matters at issue in such determination* or decision, by such intermediary officer ... either on motion of such intermediary officer ... or on the motion of the provider affected by such determination or decision *to revise any matter in issue at any such proceedings.* Any such request to reopen must be made ... within 3 years of the date of the notice of the intermediary determination. *Id.* (emphasis supplied).

Moreover, 42 C.F.R. § 405.1889, entitled "Effect of a revision," provides that the revision, not the entire revised NPR, shall be a separate and distinct determination, stating:

Where a revision is made in a determination of decision on the amount of program reimbursement after such determination or decision has been reopened as provided in § 405.1885, *such revision shall be considered a separate and distinct determination or decision to which the provisions of §§ 405.1811, 405.1835, 405.1875 and 405.- 1877 are applicable.* 42 C.F.R. § 405.1889 (emphasis supplied).

Sections 405.1811, 405.1835, 405.1875 and 405.1877 of the regulations provide for the right to an intermediary hearing, the right to a Board hearing, the possibility of review by the Administrator, and the right to judicial review. Thus, § 405.1889 provides for a revision in an NPR under the reopening regulation to be considered a separate and distinct determination which is then appealable. It is the revision, however, that is appealable, not the entire NPR.

The Hospital puts forward several arguments against this interpretation of the reopening regulations. First, the Hospital argues that this construction of the reopening regulations is contrary to the plain meaning of the appeal provision within the Medicare statute itself. *See* 42 U.S.C. § 1395oo (a). The Hospital contends that the statute provides the only jurisdictional prerequisites for PRRB review: (1) dissatisfaction with a final determination as to the amount of total program reimbursement due the provider; (2) an amount in controversy of at least $10,000; and (3) the filing of a request for a hearing within 180 days of the intermediary's final determination. *Id.* The Hospital argues that any restriction on the scope of appeal rights of a revised NPR would limit the appeal rights guaranteed by this section of the statute.

The Court is not persuaded by plaintiff's plain meaning argument. First, 42 U.S.C. § 1395oo(a)(1)(A) does not define a "final determination ... as to the amount of total program reimbursement" in the context of the reopening and revising of an original NPR. Thus, the regulations do not contradict the statute by defining *the revision of the NPR* as a separate and distinct determination which is subject to appeal. There is no indication at all in § 1395oo (a)(1)(A) whether the revised NPR should be considered a final determination as to the matters considered or to the entire NPR.

Second, the Court notes that the statutory authorization of reopening, 42 U.S.C. § 1395x(v)(1)(A)(ii), requires that the regulations "provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive." 42 U.S.C. § 1395x(v)(1)(A)(ii); *see, State of Oregon v. Bowen,* 854 F.2d 346, 349 (9th Cir. 1988) (interpreting the statutory basis for the reopening process); *Memorial Hospital v. Sullivan,* 779 F.Supp. 1406, 1409 (D.D.C. 1991) ("plaintiff's rights in the reopening process are defined by the agency's regulations and not by Congressional directive"). Thus, there is nothing in the statutory authorization for reopening to indicate that the Secretary could not promulgate regulations that limit the scope of appeal of a revised NPR to the revisions that were undertaken.

Plaintiff also contends that Ninth Circuit and Supreme Court precedent support its plain meaning interpretation of § 1395oo (a) as allowing for appeal of any matter in the revised NPR. *See Bethesda Hospital Ass'n v. Bowen,* 485 U.S. 399, 108 S.Ct. 1255, 99

L.Ed.2d 460 (1988); *State of Oregon v. Bowen*, 854 F.2d 346 (9th Cir.1988). However, the Court finds that the case law cited by plaintiff does not, as plaintiff asserts, require an interpretation of the reopening regulations as providing for appeal of any matter in the revised NPR, whether or not a matter at issue in the reopening.

In *Bethesda Hospital,* providers had self-disallowed malpractice insurance costs since the regulations did not allow recovery of those costs. The Supreme Court held that a provider was not required to first seek reimbursement from their intermediary when submitting their cost reports in order to later appeal the issue of the validity of the regulation to the PRRB. *Bethesda Hospital,* 485 U.S. at 405, 108 S.Ct. at 1259. This holding was based on the Court's construction of the plain meaning of the term "dissatisfied" in § 1395oo (a)(1)(A) of the statute. *Id.* at 403–05, 108 S.Ct. at 1257–59.

The Supreme Court held that the Secretary's reading of an exhaustion requirement into § 1395oo (a) was contrary to its plain meaning; a provider could be "dissatisfied with a final determination ... as to the amount of total program reimbursement" without having first challenged the validity of a regulation when submitting its cost report to the intermediary. *Id.* at 404, 108 S.Ct. at 1258. The Court noted that "[n]o statute or regulation expressly mandates that a challenge to the validity of a regulation be submitted first to the fiscal intermediary." *Id.*[11]

The construction of § 1395oo(a)(1)(A) in *Bethesda Hospital* does not require, as plaintiff suggests, that the Court define the entire revised NPR to be a "final determination" under § 1395oo (a)(1)(A) despite a contrary definition provided by the reopening regulations. Moreover, the case before this Court does not present the situation where an NPR was issued and the provider sought to appeal the exclusion of certain costs not previously submitted to the intermediary. Here, plaintiff had the opportunity to claim dissatisfaction with the RCL issues initially when the original NPR was issued. Now, plaintiff is claiming dissatisfaction with issues that may not have been reopened in the revised NPR; if the issues were not reopened then they are not a part of the "final determination" which can be appealed.

Plaintiff also relies on the Ninth Circuit's interpretation of "final determination" in *State of Oregon v. Bowen.* The court in *Oregon v. Bowen* held that the intermediary's decision not to reopen was reviewable by the PRRB since it was a "final determination" under § 1395oo (a)(1)(A). *Oregon v. Bowen,* 854 F.2d at 349. The court rejected the Secretary's argument that 42 C.F.R. § 405.1885 barred review of the decision not to reopen since it vested jurisdiction to reopen solely in the body that last rendered a decision. *Id.* The court explained that though the Board did not have *jurisdiction to reopen,* the regulation did not preclude it having *jurisdiction to review* the decision of whether or not to reopen. *Id.*

Plaintiff argues that under the expansive definition of final determination in *Oregon v. Bowen,* this Court should not interpret the reopening regulations as restricting what is considered a final determination in the reopening process for the purpose of Board jurisdiction under § 1395oo (a). Though the Court agrees that *Oregon v. Bowen* interpreted "final determination" broadly, the Court is not persuaded that upholding the Secretary's interpretation as to the issue-specific appeal of a revised NPR runs contrary to the spirit of *Oregon v. Bowen.*

The *Oregon v. Bowen* court based its holding, first, on the plain meaning of § 1395oo (a); second, on the plain meaning of the Secretary's regulations; third, on the availability of standards for Board review of the decision not to reopen; fourth, on congressional intent evidenced by the review provi-

---

11. The Court also based its holding on § 1395oo (d) which sets forth the power of the Board to review the intermediary's decision. The Court held that this section permits the Board to " 'make any revisions on matters covered by such cost report ... even though such matters were not considered by the intermediary in making such final determination.' This language allows the Board, *once it obtains jurisdiction pursuant to subsection (a),* to review and reverse a cost report with respect to matters not contested before the fiscal intermediary." *Id.* at 405–06, 108 S.Ct. at 1259 (emphasis supplied).

sions and reopening provisions of the Medicare statute; and finally on the strong presumption that Congress intends final agency action to be judicially reviewed. *Id.* at 349–50.

In construing the reopening regulations as providing for issue-specific appeal, the Court does not circumvent any of the underlying concerns of *Oregon v. Bowen*. The revised matters are final determinations within the plain meaning of § 1395*oo* (a); the regulations specifically provide for a revision to be considered a separate and distinct determination; the Board does have jurisdiction to review any such revision; congressional intent both to provide for reopening as well as Board review is satisfied; and judicial review of any revision is available.

Moreover, to hold otherwise would permit the reopening of an NPR to be the basis for appeal of issues not considered in the reopening that could have been appealed within 180 days of the original NPR. This would be contrary to the plain meaning of § 1395*oo* (a)(1)(C) of the statute which requires that Board review be requested within 180 days of a final determination. 42 U.S.C. § 1395*oo* (a)(1)(C). The court's concern in *Oregon v. Bowen* was that the decision not to reopen an NPR was not reviewable at all under the Secretary's interpretation of 42 C.F.R. § 405.1885. Here, were the Court to agree with plaintiff's interpretation of the statute and regulations, matters not revised in the reopening could be appealed twice—initially after the original NPR and again after the revised NPR.

The Court finds the remaining cases cited by plaintiff either unpersuasive or not supporting plaintiff's position. In *Edgewater Hospital, Inc. v. Bowen*, the Seventh Circuit held that the Board had jurisdiction over all four matters that the intermediary considered in its reopening, even though it only revised one of the four. 857 F.2d 1123, 1135 (7th Cir.1988). The *Edgewater* court held that the "second NPR of March 30, 1984 was

a 'final determination' under section 1395*oo* (a) of the Act on all four 'matters in issue' as that term is used in section 405.1885 of the Regulations." *Id.* at 1137.

*Edgewater*, despite plaintiff's assertion, does not support interpreting the reopening regulations as providing for more than issue-specific appeal to the Board. The court simply held that three of the four issues decided adversely, i.e. not revised in the reopening, were matters at issue in the revised NPR and so appealable.[12] The Court agrees with *Edgewater* that the provision for appeal of "such revision" in § 405.1889 should be construed as including "matters at issue" in the reopening even if those matters are not revised as to the dollar amount of reimbursement.

For the foregoing reasons, the Court finds that the reopening regulations, 42 C.F.R. §§ 405.1885, 405.1887, 405.1889, give rise to the right to appeal to the Board any matter at issue in the revised NPR. Thus, in order for the Board to have jurisdiction of the Hospital's appeal, the Hospital must have at issue on appeal a matter that was reopened by the first revised NPR.

## C. *Appeal of the Revised NPR*

██ This brings the Court to plaintiff's first asserted basis for PRRB jurisdiction: the appeal of the three RCL issues in the first revised NPR. Plaintiff asserts that the Board had jurisdiction over the three routine cost limit issues that were appealed from the first revised NPR: (1) the failure to include malpractice costs in the RCL database; (2) the wage index used in the RCL database; and (3) the covered days of care component for California hospitals. A.R. 268.

Based on the Court's interpretation of the reopening regulations, the Court finds that the PRRB only had jurisdiction in this case over an appeal of the matters at issue in the malpractice reopening. Therefore the Court must consider whether the routine cost limit

---

**12.** *Minnesota Hospital Ass'n v. Bowen* cites *Edgewater Hospital* as supporting an interpretation of the reopening regulations that permits the PRRB to reconsider any matter contained in the cost report which was re-examined and amended by the fiscal intermediary. *Minnesota Hosp. Ass'n*

*v. Bowen,* 703 F.Supp. 780, 785 (D.Minn.1988). The Court disagrees both with this reading of *Edgewater* as well as the *Minnesota Hospital* court's holding that any issue may be appealed once the NPR is revised provided the item is contained within the original cost report.

issues were "matters at issue" in the revised NPR. Plaintiff has two arguments that the reopening caused the RCL issues to be "matters at issue" in the revised NPR: (1) that by applying the RCL to the administrative and general expenses, thereby disallowing a potion of the reimbursable malpractice costs, the RCL were reopened *generally*; (2) that the Hospital did appeal the RCL as they impacted malpractice and so the Board at least had jurisdiction over that issue.

The parties agree that the first revised NPR was undertaken in order to reimburse the Hospital for malpractice insurance costs that had been previously disallowed under the Secretary's regulations. The parties also agree that the method used to recalculate the malpractice insurance costs was to consider these costs to be an administrative and general expense. The administrative and general expense cost center was then subject to the routine cost limits. That is, the routine cost limits were applied as a cap on the reimbursable costs for that cost center. This required a recalculation and reapplication of the RCL.

Plaintiff argues that this method for calculating the revised NPR reopened the RCL issues irrespective of malpractice insurance costs for appeal purposes such that plaintiff could also appeal the wage index and covered days of issues. The Court disagrees. The Court recognizes that in order to calculate the amount the Hospital is reimbursed, the Intermediary had to apply the RCL to the various cost centers. The Court also recognizes that in the first revised NPR this resulted in the exclusion of approximately $29,000 in malpractice costs. A.R. 214.

However, the fact that the method for recalculating malpractice cost reimbursement required the reapplication of the RCL did not reopen the RCL *per se*. The RCL issues were reopened only to the extent that the RCL impacted malpractice insurance costs since it was the matter at issue in the reopening. The Hospital therefore has two remaining arguments: (1) that its initial appeal of the malpractice component gave the Board jurisdiction over its appeal; (2) that the remaining RCL issues affect malpractice and so gave the Board jurisdiction.

As to the first argument, the Court finds that the Deputy Administrator did not abuse his discretion in finding that the Hospital was not before him on appeal of the malpractice component of the RCL. *See* A.R. 5. Plaintiff claims that it was before the Board on the issue of the impact of the RCL on malpractice costs given its initial request for an appeal. *See* A.R. 268.[13] However, the Court finds that though the Hospital did initially appeal the malpractice component of the RCL, it subsequently dropped this issue from its appeal.[14]

Specifically, in its request for a Board hearing based on the second revised NPR, dated August 21, 1991, the Hospital asserted it was entitled to an exception to the RCL do to the incorrect wage index used and an inaccurate adjustment for covered days of care. A.R. 173. The Hospital's request for expedited judicial review of the RCL issues also made no mention of the inclusion of the malpractice costs in the RCL. A.R. 182–84.

Moreover, in response to the Board's request to brief whether the it had jurisdiction over the appeal, the Hospital responded on October 3, 1991, stating:

13. Much of the confusion in this case is due to the Hospital's pursuit of two separate appeal procedures simultaneously. In its request for a Board hearing, the Hospital claimed it was entitled to an exception from the RCL. A.R. 268. However, it had not yet requested an exception from the Intermediary. A.R. 213. This resulted in numerous letters between the parties attempting to clarify the issues which the Hospital wished to appeal. The Court has set forth this exchange in detail in the background section of this Order.

14. The Secretary argued in its brief that the second revised NPR mooted this issue for the purpose of appeal since it exempted the malpractice costs from the RCL due to HCFAR 89–1. The Hospital asserted that the Secretary could not unilaterally moot an issue and thereby deprive the Hospital of jurisdiction over its appeal. The Court agrees that had the Hospital been before the Board on the issue of the RCL as it affected malpractice costs, the second revised NPR could not "moot" the Board's jurisdiction. However, as discussed below, the record supports the Secretary's conclusion that the Hospital did not pursue that issue on appeal.

With respect to the Routine Cost Limit (RCL) issue, we are appealing merely the incorporation of an incorrect wage index and an inadequate adjustment for "covered days of care" in the computation of the RCL. As indicated in our jurisdictional brief of August 28, 1991, *the inclusion of inaccurate malpractice insurance costs has been resolved based on HCFAR 89–1.* The Intermediary issued a Revised Notice of Program Reimbursement (NPR) on February 28, 1991 to correct the treatment of malpractice insurance cost. A.R. 98 (emphasis supplied).

In addition, in requesting review of the Board's decision that it lacked jurisdiction over the two remaining RCL issues, the Hospital stated:

> The Provider was satisfied with the treatment of the malpractice insurance cost with respect to the RCL. Therefore, the Provider did not address this component of the RCL when if filed its Request for a Board Hearing on August 21, 1991. However, the Provider was *not* [sic] satisfied with the determination of the RCL with respect to the wage index component and the "covered days of care" adjustment component. This dissatisfaction with the determination resulted in the filing of the Request for Board Hearing on August 21, 1991. A.R. 16 (emphasis supplied).

The Court finds based on the Hospital's position before the Board as well as before the Acting Deputy Administrator, that the Hospital did not pursue its appeal of the RCL issues as they affected malpractice costs. The Administrator did not abuse his discretion in determining based on the record that the Hospital had abandoned its appeal of the RCL issue as it related to malpractice costs.

Finally, the Court finds that the Secretary did not abuse her discretion in determining that the two RCL issues before the Board were not affected by the malpractice reopening in any other manner. *See* A.R. 6. The Hospital's argument before this Court as well as below was that in order to address malpractice insurance cost, the Intermediary had reopened the RCL issues concerning the wage index and covered days of care compo-

nents. A.R. 16. However, both the Board as well as the Administrator specifically found that the wage index and covered days of care issues were not affected by the malpractice reopening and so were not "matters at issue" which could be appealed. A.R. 6, 209.

The Court finds, therefore, that the Secretary did not abuse its discretion in determining first, that the Hospital had dropped its appeal of the RCL as it impacted malpractice insurance costs, and second, that the remaining RCL issues were not matters at issue in the first revised NPR. The Court notes that this finding is based on the Hospital's own characterization of the issues it wished to appeal as evidenced by the administrative record.

### D. *Appeal of the Exception Request*

■ The final issue is whether the Secretary abused her discretion in determining that the Hospital had not pursued the appeal of the denial of its exception request. Plaintiff argues that there is not sufficient evidence in the record to uphold the administrator's determination that it was not before the Board or before the administrator appealing the denial of its exception. Plaintiff argues that the second revised NPR cannot moot the Boards jurisdiction simply by paying the Hospital the additional $29,000 previously disallowed.

The Court disagrees with plaintiff's characterization of the record. Again, the Court notes that due to the simultaneous pursuit both of an exception to the RCL as well as an appeal of the RCL issues, the record is replete with correspondence concerning precisely what the Hospital sought to pursue which is set forth in detail in the background section of this Order.

By letter dated December 5, 1990, the Hospital requested an exception to the RCL in its original request for a hearing. A.R. 268. The Hospital also requested the Intermediary grant an exception to the RCL. A.R. 213. The Board reinstated the Hospital's appeal upon being informed that the Intermediary had denied the request for an exception. A.R. 207. However, the Hospi-

tal's list of issues for appeal did not frame its appeal as a denial of the exception request nor did its request for EJR. A.R. 182–84, 195.

Moreover the Board twice asked the Hospital to clarify whether it was appealing the denial of the exception request. A.R. 180, 102. The Hospital response to the second request stated that it was appealing the incorporation of an incorrect wage index and an inadequate adjustment of covered days of care only. A.R. 103. Finally, the Board specifically noted that it did not address in its April 22, 1992, decision whether it had jurisdiction over the denial of the exception request and requested the Hospital brief the issue. A.R. 38. The Hospital apparently did not do so.

Therefore, the Court finds that the administrator's decision that the denial of the exception request was not before him on appeal (A.R. 5, fn.2) was not arbitrary, capricious, unsupported by the record taken as a whole or contrary to law. The Court agrees with plaintiff that the second revised NPR could not moot its appeal rights had they been perfected, as plaintiff claims. However, plaintiff did not pursue the appeal of the exception with the Board when requested to do so and therefore the Court upholds the administrator's decision to affirm the Board's denial of jurisdiction.

IV. *Conclusion*

For the foregoing reasons, the Court affirms the decision of the Secretary of Health and Human Services and GRANTS summary judgment in favor of defendant.

IT IS SO ORDERED.