**FRENCH HOSPITAL MEDICAL CENTER, a California nonprofit corporation, Plaintiff–Appellant,**

v.

**Donna E. SHALALA, in her official capacity as Secretary of the United States Department of Health and Human Services, Defendant–Appellee.**

No. 94–15366.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1995.

Decided July 9, 1996.

James M. Gaynor, Jr., McDermott Will & Emery, Chicago, Illinois; Kathleen Houston Drummy, McDermott Will & Emery, Los Angeles, California, for plaintiff-appellant.

Gerard Keating and Charles Bailey, Office of the General Counsel, United States Department of Health and Human Services, Washington, D.C., for defendant-appellee.

Before: HALL, KOZINSKI and HAWKINS, Circuit Judges.

Opinion by Judge HAWKINS;
Concurrence by Judge KOZINSKI.

## OPINION

MICHAEL DALY HAWKINS, Circuit Judge:

This appeal requires us to decide whether a health care provider may seek administrative review of a Medicare cost limit formula, where the provider first challenged that formula in its revised notice of Medicare reimbursement, but had not challenged that same formula in its original notice of reimbursement. We hold that the cost limit formula is not within the scope of administrative review because that formula was not at issue in the revised notice of Medicare reimbursement.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

Under the Medicare statute, Title XVIII of the Social Security Act, Pub.L. No. 89-97, 79 Stat. 291 (1965)(codified as amended at 42 U.S.C. §§ 1395 to 1395ccc (1988)), the Secretary of Health and Human Services ("Secre-

tary") reimburses health care providers for services provided Medicare patients. Medicare reimbursement is typically handled by "fiscal intermediaries," such as insurance companies, who make interim payments to health care providers, then determine the proper amount of reimbursement for the entire fiscal year. 42 U.S.C. § 1395h(a). A health care provider seeking reimbursement must submit an annual cost report to its fiscal intermediary. 42 C.F.R. §§ 413.20(a)-(b) & 413.24(f) (1994). The fiscal intermediary then audits the cost report, determines the reimbursement amount to which the provider is entitled under the statute and regulations, and issues a Notice of Amount of Medicare Program Reimbursement ("NPR"). 42 C.F.R. § 405.1803.

During the period at issue in this appeal, health care providers were entitled under the statute to reimbursement for the lesser of the "reasonable cost" of providing services to Medicare patients or the provider's "customary charges" for such services.[1] 42 U.S.C. §§ 1395f(b)(1) & 1395x(v)(1)(A). In addition, the Medicare statute defining "reasonable cost" expressly authorizes the Secretary to establish cost limits. 42 U.S.C. § 1395x(v)(1)(A); 42 C.F.R. § 413.30. Pursuant to this statutory authorization, the Secretary, acting through the Health Care Financing Administration ("HCFA"), promulgated cost ceilings called "routine cost limits" ("RCL") for the period at issue in this appeal. 46 Fed.Reg. 33,637 (June 30, 1981). Providers generally were not reimbursed for routine costs that exceeded the routine cost limits. Of the factors HCFA included in formulating the RCL, two have significance for this appeal: (1) a wage index allowing HCFA to adjust the RCL to reflect regional variations in labor costs; and (2) a formula permitting upward adjustments in the RCL for regions where the number of covered days of care per 1,000 Medicare beneficiaries is below the national average. 46 Fed.Reg. 33,641 & 33,643. During the period at issue in this case, fiscal intermediaries calculating providers' reimbursements used routine cost limits that reflected both factors.

## B. Facts

French Hospital Medical Center is a California-based health care provider certified under the Medicare statute, 42 U.S.C. §§ 1395 to 1395ccc. Pursuant to the statute, the hospital filed a Medicare cost report for the fiscal year ending December 31, 1982 ("FY 1982") with Blue Cross of California, the hospital's fiscal intermediary. Blue Cross audited the hospital's cost report, and on May 15, 1984, issued a Notice of Amount of Medicare Program Reimbursement ("the original NPR").

The Medicare statute permits a health care provider meeting certain jurisdictional prerequisites to appeal an NPR, within 180 days of its issuance, by requesting a hearing before the Provider Reimbursement Review Board ("PRRB") established by the Secretary. 42 U.S.C. § 1395oo(a). In addition, Medicare regulations allow a fiscal intermediary to reopen a provider's cost report and issue a revised NPR within three years of issuing the original NPR. 42 C.F.R. § 405.1885.

The hospital did not appeal the original NPR of May 15, 1984. However, on March 31, 1989, pursuant to HCFA Ruling 89–1, a ruling requiring fiscal intermediaries to treat malpractice insurance costs as an administrative and general cost, Blue Cross reopened the hospital's cost report for FY 1982. The sole purpose of reopening the cost report was to treat the hospital's malpractice insurance costs as an administrative and general cost. The change increased the hospital's total reimbursement by $24,644, but, under the RCL, an additional $39,823 of actual insurance costs was disallowed. On November 9, 1990, Blue Cross issued a revised NPR for FY 1982 ("the first revised NPR").

In response to Blue Cross's downward revision of its reimbursement, the hospital appealed, first to the PRRB and eventually to the federal courts.

On December 20, 1990, the hospital asked Blue Cross for an exception to the RCL,

---

1. Reasonable costs are determined pursuant to cost finding methodologies promulgated by the Secretary. 42 C.F.R. § 413.24.

claiming the RCL formula was flawed in three respects: (1) the RCL database omitted malpractice insurance costs so that the limits on certain accounts to which these expenses were retroactively applied were improperly low; (2) the wage index used in the RCL was incorrect; and (3) the adjustment for covered days of care was inaccurate for California hospitals. *See* 42 C.F.R. §§ 413.30(c) & (f).[2] Blue Cross denied the hospital's request on January 10, 1991. Because the RCL were identical for the original and revised NPRs, and the hospital had not challenged the RCL in the 180 days following the original NPR, Blue Cross concluded that the hospital could no longer seek an exception to the RCL.

Nevertheless, Blue Cross did offer the hospital relief as to its first complaint: HCFA, it noted, had given malpractice insurance payments "special consideration" following its Ruling 89–1, and had instructed intermediaries to reimburse providers for "the additional amount due . . . as a result of the [m]alpractice reopening without regard to its impact on the RCL." To make the malpractice reimbursement HCFA required, Blue Cross issued yet another revised NPR on February 18, 1991 ("the second revised NPR"). The second revised NPR increased the hospital's reimbursement by $39,823 over the first revised NPR. With this allowance, French Hospital was reimbursed in full for its malpractice costs—the issue Blue Cross had reopened the NPR to address.

Despite Blue Cross's reimbursement of its malpractice insurance costs, the hospital continued to pursue two other avenues of appeal before the PRRB. On December 5, 1990, the hospital sought a PRRB hearing to raise the same three challenges to the RCL it had presented to Blue Cross. *See* 42 C.F.R §§ 405.1835 & 405.1889.[3] Moreover, on July 26, 1991, it asked the PRRB for expedited judicial review ("EJR") of its challenge to the RCL. *See* 42 C.F.R. § 405.1842.[4] In seeking EJR, however, the hospital challenged only

the wage index and the covered days of care components, and explicitly declared that it was not challenging the exclusion of malpractice insurance costs from the RCL database.

In response to the PRRB's request that it clarify the issues it sought to appeal, the hospital informed the PRRB on October 3, 1991 that it no longer challenged the exclusion of malpractice insurance costs because Blue Cross had resolved that issue in the second revised NPR. Its appeal was therefore limited to the wage index and covered days of care components of the RCL.

In a letter of April 22, 1992, the PRRB denied the hospital's appeals on jurisdictional grounds. The PRRB's decision rested chiefly on its interpretation of 42 C.F.R. § 405.1889, the regulation defining revised NPRs. Quoting § 405.1889, the PRRB stated that a revised NPR was, for purposes of appeal, "a separate and distinct determination" from an original NPR. Based on this distinction, the PRRB concluded that § 405.1889 limited the scope of review of a revised NPR:

"A revised NPR does not reopen the entire cost report to appeal nor does it extend the 180 day appeal period for any earlier NPR. It merely reopens those parts of the cost report (issues) adjusted by the revised NPR and only those adjustments may be appealed."

In this case, the PRRB concluded that it lacked jurisdiction over the revised NPR because "[t]here are *no audit adjustments* from the revised NPR under dispute." (emphasis added). The PRRB declined to hear the hospital's challenges to the wage index and covered days of care components of the RCL because Blue Cross had not adjusted the RCL.

The hospital next appealed the PRRB decision to the Acting Deputy Administrator of HCFA, who acted on behalf of the Secretary. The hospital argued that Blue Cross's first revised NPR *had* addressed the RCL "be-

---

**2.** These regulations allow providers to ask their fiscal intermediaries to grant an "exception" to the cost limits.

**3.** As discussed below, these regulations permit a provider to appeal a revised NPR to the PRRB.

**4.** This regulation allows a provider to seek expedited judicial review.

cause malpractice costs are a vital component in the computation of the RCL."

The Acting Deputy Administrator affirmed the PRRB's decision in a final administrative decision of June 18, 1992. His reasoning adhered closely to that of the PRRB. Noting that 42 C.F.R. § 405.1889 defines revised NPRs as "separate and distinct determination[s]" from original NPRs, the Acting Deputy Administrator concluded:

> "[T]he [first] revised NPR was limited to the treatment of malpractice insurance as an administrative and general expense as required by the application of HCFA Ruling 89–1. The RCL components with which the [hospital] expressed dissatisfaction, i.e., the wage index and covered days of care issues, were neither affected by this adjustment, nor did this adjustment change the amount in dispute."

The Acting Deputy Administrator therefore concluded that the hospital's request for a hearing on the wage index and covered days of care components of the RCL was filed well beyond the 180–day deadline following the original NPR. The Administrator also concluded that the hospital did not pursue an appeal of Blue Cross's partial denial of its request for exception.[5]

The hospital next sought judicial review in the U.S. District Court for the Northern District of California, pursuant to 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1331. Following the parties' cross-motions for summary judgment, the district court granted summary judgment in favor of the Secretary. *French Hosp. Medical Ctr. v. Shalala,* 841 F.Supp. 1468 (N.D.Cal.1993). The hospital brought this appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

The hospital raises several arguments on appeal.

First, the hospital argues that its fiscal intermediary's revised NPR *did* affect the RCL issues it seeks to appeal. Its argument is that Blue Cross, in applying the RCL to malpractice insurance costs upon reopening the cost report, had to recalculate and reapply the RCL, and thereby affected the RCL, including the wage index and covered days of care components.

Second, the hospital argues that even assuming the two RCL components were not "matters at issue" in the revised NPR, it is nonetheless entitled to raise them on appeal to the PRRB. It bases this conclusion on its contention that the district court erred in accepting the Secretary's "issue-specific" interpretation of the scope of administrative review of revised NPRs. The sole jurisdictional prerequisites for a PRRB hearing, insists the hospital, are outlined in the Medicare statute, 42 U.S.C. § 1395oo(a): (1) a final determination by the intermediary as to the total amount of program reimbursement; (2) an amount in controversy of at least $10,000; and (3) the filing of a request for a hearing within 180 days after notice of the intermediary's final determination. 42 U.S.C. § 1395oo(a). The hospital contends that it satisfied these requirements in this case.

Third, the hospital argues that the Medicare regulation governing appeals of revised NPRs, 42 C.F.R. § 405.1889, does not render the scope of review of a revised NPR narrower than that of an original NPR. It contends that the plain language of § 405.1889 grants a provider the right to appeal any aspect of an intermediary's reimbursement determination, so long as the provider is dissatisfied with the total amount of reimbursement. This regulation, argues the hospital, does not require that a provider's appeal relate to issues that were addressed or adjusted in the revised NPR.

■ We hold that under the Medicare statute and regulations, the PRRB has jurisdiction to hear challenges to revised NPRs.

---

5. The district court upheld the Secretary's decision that the hospital did not pursue its appeal of Blue Cross's partial denial of its request for exception. *French Hosp. Medical Ctr. v. Shalala,* 841 F.Supp. 1468, 1478–79 (N.D.Cal.1993). The record supports the district court's conclusion. In its decision denying jurisdiction to hear the hospital's appeal, the PRRB specifically invited the hospital to brief whether it had jurisdiction to hear the hospital's appeal of Blue Cross's denial of its exception request. The PRRB informed the hospital that it had 30 days to address the issue, after which the PRRB would dismiss that appeal. The record contains no evidence that the hospital ever pursued the issue.

However, the hospital's challenge to the wage index and covered days of care components of the RCL does not fall within the PRRB's scope of review because the fiscal intermediary, in revising its NPR, did not reconsider these matters.

## II. ANALYSIS

### A. Standard of Review

The district court's grant of summary judgment is reviewed de novo. *Mt. Diablo Hosp. v. Shalala*, 3 F.3d 1226, 1230 (9th Cir.1993). In reviewing the Secretary's decision, we are governed by the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, which provides that the agency's decision will be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... [or] unsupported by substantial evidence." 5 U.S.C. § 706(2)(A). *Vista Hill Foundation, Inc. v. Heckler*, 767 F.2d 556, 559 (9th Cir.1985). Moreover, an agency's decision may be upheld only on the basis of its reasoning in that decision. *Id.* at 559.

In reviewing an administrative agency's construction of a statute, this court must reject constructions that are contrary to clear congressional intent or that frustrate the policy Congress sought to implement. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984). If a statute is silent or ambiguous, however, the court will defer to the agency's interpretation. 467 U.S. at 843, 104 S.Ct. at 2782. Deference is also appropriate in reviewing an agency's interpretations of its own regulations. Unless an alternative reading is compelled by the plain language of the regulation or by other indications of the agency's intent at the time it promulgated the regulation, we must defer to the agency's

interpretation. *Providence Hosp. of Toppenish v. Shalala*, 52 F.3d 213, 216 (9th Cir.1995) (citing *Thomas Jefferson Univ. v. Shalala*, —— U.S. ——, ——, 114 S.Ct. 2381, 2386–87, 129 L.Ed.2d 405 (1994)).[6]

### B. The Provider Reimbursement Review Board's Jurisdiction over a Revised Notice of Program Reimbursement

Before addressing whether the PRRB's scope of review encompasses the hospital's challenges to the RCL factors, it is necessary to discuss the PRRB's jurisdiction over challenges to a fiscal intermediary's revised NPR.

#### 1. Statutory Framework

The Medicare statute established the PRRB to review reimbursement determinations by fiscal intermediaries. 42 U.S.C. § 1395*oo*(a). Under § 1395*oo*(a), a health care provider that has filed a timely cost report "may obtain a hearing with respect to [its] cost report by a Provider Reimbursement Review Board" if the following jurisdictional prerequisites are met:

"(1) such provider

(A)(i) *is dissatisfied with a final determination* [of its fiscal intermediary] ... as to the amount of total program reimbursement due the provider;

(2) the amount in controversy is $10,000 or more, and

(3) such provider files a request for a hearing *within 180 days after notice of the intermediary's final determination* [.]"

The Ninth Circuit has yet to decide whether a revised NPR constitutes a "final determination" within the meaning of the statute, 42 U.S.C. § 1395*oo*(a). Other courts are divided on this issue.

---

6. We reject the hospital's contention that this court should not defer to the Secretary's interpretation of its own regulations because this case concerns jurisdictional issues. Citing *Adams House Health Care v. Heckler*, 817 F.2d 587, 594 (9th Cir.1987), *vacated*, 485 U.S. 1018, 108 S.Ct. 1569, 99 L.Ed.2d 885 (1988), *on remand*, 862 F.2d 1371 (9th Cir.1988), the hospital contends that questions of jurisdiction are "beyond [an] agency's expertise[,]" and are for courts to de-

cide. The hospital's citation is inappropriate. *Adams House* was vacated and remanded for reconsideration in light of *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988). Although this court reaffirmed its initial holding on remand, our new opinion did not reinstate the vacated opinion, and omitted the portion of the vacated opinion on which the hospital bases its contention. *See Adams House*, 862 F.2d at 1372–76.

The Seventh Circuit has held that a revised NPR is a "final determination" within the meaning of § 1395oo(a). *Edgewater Hosp., Inc. v. Bowen,* 857 F.2d 1123, 1134 (7th Cir.1988), *modified,* 866 F.2d 228 (1989). Although we find that the statute by its language does not exclude the possibility that the term "final determination" includes revised NPRs, we disagree with the Seventh Circuit's reasoning.

First, in interpreting § 1395oo(a), the Seventh Circuit relied heavily on the Supreme Court's decision in *Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988). *See Edgewater,* 857 F.2d at 1132. However, *Bethesda* did not address the PRRB's jurisdiction over challenges to revised NPRs. At issue in *Bethesda* was the meaning of "dissatisfied," one of the prerequisites to PRRB jurisdiction under § 1395oo(a), in the context of an initial NPR. The Supreme Court held in *Bethesda* that a provider satisfied this jurisdictional requirement even though it failed to include its claim in its original cost report. The Court's decision rested on its broad reading of the scope of review of *initial* NPRs under § 1395oo(d), which allows the PRRB to review "any cost incurred during the cost period." *Bethesda* did not, however, concern a revised NPR. Second, the Seventh Circuit in *Edgewater,* 857 F.2d at 1130, held that less deference was due the Secretary on the issue of Medicare reimbursements, relying on its earlier decision in *St. James Hosp. v. Heckler,* 760 F.2d 1460, 1470 (7th Cir.), *cert. denied,* 474 U.S. 902, 106 S.Ct. 229, 88 L.Ed.2d 228 (1985). We disagree with the view that the Secretary's decisions about Medicare reimbursements warrant less deference.[7]

The D.C. Circuit has taken a different view of the statute. It has interpreted the statute narrowly, holding that § 1395oo(a) does not expressly confer upon the PRRB jurisdiction to hear challenges to a *revised* NPR. *HCA Health Services of Oklahoma, Inc. v. Shalala,* 27 F.3d 614, 618 (D.C.Cir.1994). Because the language of the statute nowhere mentions the term "Notice of Program Reimbursement," the D.C. Circuit concluded that "it cannot be said that the Statute clearly identifies the reopening decision as the locus of the final determination as to the amount of total program reimbursement." *Id.* at 618. It therefore looked to the Medicare regulations to determine the PRRB's jurisdiction over revised NPRs. *See also Rutland Regional Medical Ctr. v. Sullivan,* 835 F.Supp. 754, 759 (D.Vt.1993) (42 U.S.C. § 1395oo(a) fails to address whether provider may appeal any item in a reopened cost report); *Albert Einstein Medical Ctr. v. Sullivan,* 830 F.Supp. 846, 849 (E.D.Pa.1992) (42 U.S.C. § 1395oo(a) does not resolve whether revised NPR constitutes "final determination"), *aff'd,* 6 F.3d 778 (3d Cir.1993); *Delaware County Memorial Hosp. v. Sullivan,* 836 F.Supp. 238, 243 (E.D.Pa.1991).

We conclude that "final determination," as used in § 1395oo(a), does not exclude the possibility that the statute might encompass "revised" NPRs. When a fiscal intermediary reaches a "final" resolution of a cost report, it may well have gone through several revisions. Moreover, courts have consistently held that § 1395oo(a) covers *initial* NPRs, even though the statute does not mention them expressly. *See HCA,* 27 F.3d at 617. Because the statute does not resolve whether the PRRB has jurisdiction over challenges to revised NPRs, we turn to the Medicare regulations, which provide clearer guidance on this subject.

## 2. Regulatory Framework

The regulations governing Medicare reimbursements authorize a fiscal intermediary, at the request of a provider or on its own initiative, to reopen the provider's annual cost report and issue a revised NPR. 42 C.F.R. § 405.1885. Related regulations permit the PRRB to review revised NPRs. *See HCA,* 27 F.3d at 619–20.

Two regulations, read in tandem, allow a provider to appeal its fiscal intermediary's revised NPR. 42 C.F.R. § 405.1835 grants a provider a right to a hearing before the PRRB, provided that (1) an "intermediary

---

7. Instead, we have held that we must defer to the Secretary's interpretation of her own regulations, unless those contradict the congressional man-date expressed in the statute. *See Providence Hosp. of Toppenish v. Shalala,* 52 F.3d 213, 216 (9th Cir.1995).

determination has been made with respect to the provider"; (2) the provider files a written request with the PRRB; and (3) the amount in controversy is $10,000 or more. 42 C.F.R. § 405.1835. Another regulation, 42 C.F.R. § 405.1889, defines revised NPRs as "separate and distinct" from initial NPRs, and provides that § 405.1835 hearing rights apply specifically to revised NPRs. 42 C.F.R. § 405.1889 thus makes revised NPRs appealable to the PRRB.

The structure of the Medicare regulations confirms this conclusion. The right of review created by 42 C.F.R. §§ 405.1835 & 405.1889, which allows the PRRB to review disputes between providers and intermediaries concerning revised NPRs, parallels the right of review under the statute, which allows the PRRB to review disputes arising out of initial NPRs. 42 U.S.C. § 1395oo(a). Because the regulations allow intermediaries to reopen and revise NPRs, it is logical that the provider should have some means to appeal those revisions.

## C. The Scope of Administrative Review in a Challenge to a Revised Notice of Program Reimbursement

When a provider appeals an *initial* NPR under 42 U.S.C. § 1395oo(a), the scope of review is quite broad. Once the three jurisdictional prerequisites are satisfied, the PRRB has jurisdiction to review a broad range of issues. Section 1395oo(d) provides in relevant part:

"The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and *to make any other revisions on matters covered by such cost report* (including revisions adverse to the

provider of services) *even though such matters were not considered by the intermediary in making such final determination.*" (emphasis added).

The Supreme Court has interpreted § 1395oo(d) broadly in the context of appeals of initial NPRs.

"[The language of § 1395oo(d) ] allows the [PRRB], once it obtains jurisdiction pursuant to subsection (a), to review and revise a cost report with respect to matters not contested before the fiscal intermediary. The only limitation prescribed by Congress is that the matter must have been 'covered by such cost report,' that is, a cost or expense that was incurred within the period for which the cost report was filed [.]"

*Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399, 405–06, 108 S.Ct. 1255, 1259, 99 L.Ed.2d 460 (1988). *See also Adams House Health Care v. Heckler,* 817 F.2d 587 (9th Cir.1987), *vacated,* 485 U.S. 1018, 108 S.Ct. 1569, 99 L.Ed.2d 885 (1988), *on remand* 862 F.2d 1371 (9th Cir.1988).

In the case of a revised NPR, however, a different analysis of the scope of review is warranted. As discussed above, both a fiscal intermediary's power to reopen a cost report,[8] *see* 42 C.F.R. § 405.1885, and the PRRB's authority to hear challenges to revised NPRs derive from the Medicare regulations. *See* 42 C.F.R. §§ 405.1835 and 405.1889. We therefore look to Medicare regulations, rather than to 42 U.S.C. § 1395oo(d), to determine the scope of review of a revised NPR. In our view, the regulations governing revised NPRs provide for a scope of review that is narrower than the scope of review of initial NPRs under 42 U.S.C. § 1395oo(d).[9]

---

**8.** The Ninth Circuit has held that 42 U.S.C. § 1395x(v)(1)(A)(ii) implicitly authorizes reopenings by fiscal intermediaries. *Oregon on Behalf of Oregon Health Sciences Univ. v. Bowen,* 854 F.2d 346, 349 (9th Cir.1988). That subsection requires the Secretary's regulations to "provide for the making of suitable retroactive corrective adjustments...." However, that holding has been undercut by the Supreme Court's decision in *Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 408–09, 419–20, 113 S.Ct. 2151, 2156, 2162, 124 L.Ed.2d 368 (1993), which held that this subsection refers instead to "permitting ... a 'year end book balancing of the monthly install-

ments' with the amount determined to be 'reasonable' under the applicable regulations."

**9.** The concurrence suggests that the majority interprets 42 U.S.C. § 1395oo(d) as a "supplemental jurisdictional provision" that "expands the PRRB's jurisdiction." Nothing in our opinion is meant to suggest that.

Rather, we make clear that § 1395oo(d) not only does not expand the PRRB's jurisdiction, *it has nothing whatsoever to do with the PRRB's jurisdiction.* Instead, as we note, § 1395oo(d) governs the PRRB's *scope of review.*

42 C.F.R. § 405.1889 specifies how re-openings or revisions are to be treated for purposes of appeal. Section 405.1889 provides that

"[w]here a revision is made in a determination or decision on the amount of program reimbursement after such determination or decision has been reopened as provided in § 405.1885, *such revision shall be considered a separate and distinct determination* to which the provisions of §§ 405.1811, 405.1835 and 405.1877 are applicable." (emphasis added).

Section 405.1889's distinction between revised and original NPRs has two effects. The regulation, read in tandem with the regulations prescribing various routes of appeal, creates a separate right of appeal for providers to challenge revised NPRs. At the same time, however, § 405.1889 limits the scope of review of revised NPRs because it mandates that they be considered "separate and distinct" for purposes of appeal. 42 C.F.R. § 405.1889 bifurcates the revised NPR from the initial NPR, thereby limiting the scope of review to issues addressed in that revised NPR.

Because § 405.1889 distinguishes revised NPRs from initial NPRs for purposes of appeal, we conclude that the scope of review of a revised NPR is narrower than that of an initial NPR. Courts are divided, however, as to the PRRB's scope of review over revised NPRs.

The Seventh Circuit in *Edgewater* held that the PRRB may review those matters that a fiscal intermediary *reconsidered* upon reopening the cost report, whether or not it ultimately adjusted them in its revised NPR. 857 F.2d at 1137. In *Edgewater*, the provider asked its fiscal intermediary to reopen four matters in its initial NPR. When the intermediary amended one of the four items but refused to alter the other three, the provider appealed the revised NPR to the PRRB. The Seventh Circuit held that the PRRB had jurisdiction to review all four of the items the intermediary reconsidered, not just the item it adjusted. Although the Seventh Circuit suggested, further, that 42 U.S.C. § 1395oo(d) would permit the PRRB to review every aspect of the cost report, that discussion of a broader scope of review was dicta. 857 F.2d at 1134. *See also Minnesota Hosp. Ass'n v. Bowen*, 703 F.Supp. 780, 785 (D.Minn.1988) (holding that a provider may appeal any item contained in a revised cost report, whether or not it was reconsidered upon reopening).

The D.C. Circuit took a narrower view of the scope of review in *HCA*, holding that a revised NPR does not open the entire cost report to appeal, but reopens only the specific issues the fiscal intermediary *adjusted* in its revision. 27 F.3d at 622 (D.C.Cir.1994).[10]

In this case, both the D.C. Circuit holding and the Seventh Circuit holding would preclude the PRRB from reviewing the RCL factors the hospital seeks to appeal. The wage index and covered days of care factors underlay the RCL formula in the original

---

We underscore this distinction by describing jurisdiction and scope of review in separate sections: Section II.B.1. discusses § 1395oo(a), the statute governing the PRRB's *jurisdiction*, while Section II.C. discusses § 1395oo(d), the statute governing the PRRB's *scope of review*.

Moreover, our opinion describes § 1395oo(d) as the statutory provision governing the scope of review, and *nothing* in the opinion suggests that § 1395oo(d) governs jurisdiction. First, in describing of § 1395oo(d), the majority clearly and unequivocally states that § 1395oo(d) governs *"the scope of review* [of an initial NPR] ....  [o]nce the three jurisdictional prerequisites [of § 1395oo(a)] are satisfied" (emphasis added). Second, we distinguish between § 1395oo(d), which plainly governs the scope of review of *initial* NPRs, and the Medicare regulations, which limit the scope of review of *revised* NPRs, stating that "the regulations governing revised

NPRs provide for a scope of review that is narrower than *the scope of review of initial NPRs under 42 U.S.C. § 1395oo(d)"* (emphasis added).

The concurrence states that our opinion "creates a potential for confusion and mischief in taking seriously French Hospital's argument that 42 U.S.C. § 1395oo(d) *expands the PRRB's jurisdiction"* (emphasis added). The concern is misplaced; as our opinion makes clear, § 1395oo(d) does not even govern jurisdiction, much less expand it.

10. Although the D.C. Circuit's holding limited review to items *adjusted* by the revised NPR, it left open the question "whether a cost item must be *modified* on reopening or need only be *reconsidered* on reopening in order to become appealable to the Board." 27 F.3d at 621 (emphasis added).

NPR, issued over six years before the hospital challenged them. In reopening the cost report for FY 1982, Blue Cross neither reconsidered the RCL components nor adjusted them. Under either the Seventh Circuit view or the D.C. Circuit view, the hospital's appeal here must fail.

We agree with the holding of the Seventh Circuit in *Edgewater*, which allowed the PRRB to review all matters the fiscal intermediary had *reconsidered* upon reopening the cost report. 857 F.2d at 1134. *See also Albert Einstein Medical Ctr. v. Sullivan*, 830 F.Supp. 846, 848–49 (E.D.Pa.1992), *aff'd*, 6 F.3d 778 (3d Cir.1993) (in appealing revised NPR, provider may appeal only items the fiscal intermediary "examined or changed"); *Delaware County Memorial Hosp. v. Sullivan*, 836 F.Supp. 238, 245 (E.D.Pa.1991) (provider may appeal items that were under review in revised NPR). Limiting the PRRB's scope of review to issues the fiscal intermediary reconsidered upon reopening the NPR is consistent with the Medicare regulation governing the treatment of reopenings or revisions on appeal. 42 C.F.R. § 405.1889.[11]

In this case, the intermediary reopened the hospital's cost report for the sole purpose of applying the RCL to malpractice insurance costs. Neither the RCL, nor components of the RCL, were at issue in the revised NPR. Furthermore, the revised NPR did not alter the RCL or any of its components. Only the RCL's application to malpractice insurance costs was at issue in the revised NPR. Even that issue was resolved, however, in the second reopening and the hospital did not appeal this issue to the PRRB.[12]

The hospital argues that even assuming the RCL components were not "at issue" in the revised NPR, it is nonetheless entitled to appeal them to the PRRB. It contends the Secretary's "issue-specific" interpretation of the scope of review clashes with 42 U.S.C. § 1395*oo* because the statute does not so limit the scope of review. The sole jurisdictional prerequisites for a PRRB hearing, insists the hospital, are those outlined in 42 U.S.C. § 1395*oo*(a),[13] and the PRRB may review the "total program reimbursement due," not just specific aspects of that reimbursement.

We disagree. As discussed above, the Medicare regulations impose additional limitations on the scope of review. Moreover, allowing the provider to appeal any issue in a revised NPR would nullify the 180–day deadline for appealing the initial NPR. *See* 42 U.S.C. § 1395*oo*(a). If providers were able to call into question anything in the entire cost report, with each adjustment to the bottom line, no matter how unrelated, they would thwart the policy of finality embodied in the appeal deadline.

The hospital also argues that 42 C.F.R. § 405.1889 does not narrow the scope of review for revised NPRs. This regulation, it contends, does not require that a provider's appeal relate to issues that were addressed in the revised NPR. The "separate and distinct" language of 42 C.F.R. § 405.1889, however, refutes this contention. It clearly distinguishes initial NPRs from revised NPRs, thereby preventing a provider from reviving issues it should have appealed from an initial NPR.

Finally, the hospital argues that the Secretary's issue-specific interpretation of the scope of review of a revised NPR contradicts her earlier position on the matter. In support of its contention, it offers two unrelated

---

**11.** We need not consider the broad scope of review suggested by the Seventh Circuit in dicta, which would interpret 42 U.S.C. § 1395*oo*(d) to allow equal appeal rights under initial and revised NPRs. Our holding relies instead on the Medicare regulations, which, as discussed above, provide for a narrower scope of review of revised NPRs.

**12.** In this case, the RCL components the hospital seeks to appeal are clearly separate and distinct from the issue the intermediary reconsidered in the revised NPR. Thus, this case does not require

us to decide the reviewability of a revised NPR that addresses a narrow issue but that indirectly affects other matters contained in the initial NPR.

**13.** These jurisdictional prerequisites are: (1) a final determination by the intermediary as to the total amount of program reimbursement; (2) an amount in controversy of at least $10,000; and (3) the filing of a request for a hearing within 180 days after notice of the intermediary's final determination. 42 U.S.C. § 1395*oo*(a).

pieces of evidence. We conclude, however, that these items do not rise to the level of "persuasive evidence" of inconsistency that would require us to accord less deference to the Secretary's interpretation. *See Thomas Jefferson Univ. v. Shalala,* —— U.S. ——, ——, 114 S.Ct. 2381, 2388, 129 L.Ed.2d 405 (1994).

First, the hospital cites a 1973 letter from the Bureau of Health Insurance of the Social Security Administration, Department of Health, Education, and Welfare. Part A Intermediary Letter No. 73–22 (June 1973). In that letter, the Bureau clarified issues that had arisen at a training conference for hearing officers of fiscal intermediaries, which under the Medicare regulations may hear providers' appeals of NPRs. In clarifying the intermediary hearing process, the letter stated that "[t]he provider may raise any issue with regard to the cost report in the hearing even though a particular issue was not dealt with in the reopening." The hospital invokes this statement in support of its claim that the Secretary has not adhered to a consistent interpretation of the PRRB's scope of review of revised NPRs. However, the hospital's citation distorts this statement by ignoring the context in which it was made. The directive contained in the 1973 letter concerned *hearings before an intermediary's hearing officer,* and had nothing to do with hearings before the PRRB.

The hospital next contends that a 1983 decision by the HCFA Deputy Administrator clashes with the Secretary's interpretation of the scope of review in this case. *St. Mary's Hosp. v. Blue Cross/ Blue Shield Ass'n,* HCFA Deputy Administrator Decision (May 5, 1983). In *St. Mary's Hosp.,* the PRRB had consolidated a provider's appeal of an initial NPR for FY 1979 with its appeal of a revised NPR for FY 1978. Before the PRRB hearing, the provider sought to expand its appeal of the revised NPR to include a cost item that was not at issue in the reopening, but that was identical to the cost item it challenged in the initial NPR for FY 1979.

Although the PRRB denied the provider's request to expand the appeal of the revised NPR, the HCFA Deputy Administrator reversed this decision and allowed the provider to expand its appeal. HCFA Decision at 3. He interpreted 42 C.F.R. § 405.1841(a), which governs the form of PRRB hearings and which allows providers to challenge "additional aspects of the intermediary's determination" before the hearing, to imply that "it is the cost year that is open and not the individual issue[.]" He also stated that it would be efficient to allow a provider to expand an appeal where it is dissatisfied with a later NPR treating the same issue. *Id.* at 4. Finally, he noted that the expanded appeal "should not cause any surprise or administrative inconvenience[,]" since the cost item was already before the PRRB in the appeal of the initial NPR for FY 1979. The Deputy Administrator cautioned, however, that "[a] party to an appeal should not be allowed to add totally unrelated issues to the appeal at the last minute." *Id.*

The result in *St. Mary's Hosp.* does not foreclose the Secretary's issue-specific interpretation of the scope of review in this case. The case before us contains none of the peculiarities of *St. Mary's Hosp.* The hospital's appeal is not consolidated with another, identical appeal, and the RCL components it challenges have no relation to the issue Blue Cross examined in reopening the initial NPR. The narrowness of HCFA's ruling in *St. Mary's Hosp.,* coupled with the Secretary's longstanding issue-specific interpretation, refutes the hospital's claim of inconsistency.

## D. French Hospital Medical Center's Challenge to the Routine Cost Limitations

French Hospital Medical Center argues that the revised NPR *did* affect the two RCL components it seeks to appeal. It argues that Blue Cross, in applying the RCL to malpractice insurance costs upon reopening the cost report, had to recalculate and reapply the RCL, and thereby "affected" the RCL. It therefore argues that the RCL become "a matter at issue" each time they are applied to a provider's costs.

This analysis mischaracterizes the facts. A mere *application* of the RCL constitutes neither a *reconsideration* nor an *adjustment* of the RCL. Neither application of the RCL,

which Blue Cross undertook in both the original and revised NPRs, can be described as an adjustment or even a reconsideration of the RCL. Moreover, the wage index and covered days of care components remained unchanged. These factors, which the hospital now seeks to challenge, were never addressed by the fiscal intermediary in the revised NPR, nor did they have any impact on the revision. The revised NPR merely subjected a new cost area, malpractice insurance, to the RCL. As the PRRB correctly noted, the hospital had the opportunity to appeal that application of the RCL, but chose not to.

The hospital could have challenged the wage index and covered days of care components of the RCL back in 1984, when it received its initial NPR. It elected not to do so. When Blue Cross revised the NPR in 1990 to apply the RCL to malpractice insurance costs, the hospital had the chance to appeal that new application of the RCL. It chose to drop that part of its appeal. The Medicare regulations do not allow the hospital another opportunity to challenge the RCL and RCL components, which simply were not at issue in the revised NPR.

## III. CONCLUSION

We conclude that the Secretary's interpretation of the Medicare regulations is permissible under the Medicare statute. The regulations limit the scope of administrative review of revised NPRs to matters the fiscal intermediary reconsidered in revising the NPR. The Provider Reimbursement Review Board therefore lacks jurisdiction to review the wage index and covered days of care components of the routine cost limits, issues that were never reconsidered by the fiscal intermediary when it reopened and revised the Notice of Program Reimbursement.

The judgment of the district court is **AFFIRMED.**

KOZINSKI, Circuit Judge, concurring:

I have no quarrel with the majority's basic reasoning: 42 U.S.C. § 1395*oo*(a) doesn't specifically anticipate revised NPRs and is, thus, ambiguous as to how much of a revised NPR constitutes a "final determination" for purposes of PRRB review. In 42 C.F.R. § 405.1889, the Secretary has interpreted "final determination" to refer only to the actual revisions made (and, perhaps, those explicitly requested and refused) on reopening. Faced with an ambiguity in the statute and a reasonable agency interpretation, we must defer.

I write separately to point out that the majority errs and, in so doing, creates a potential for confusion and mischief in taking seriously French Hospital's argument that 42 U.S.C. § 1395*oo*(d) expands the PRRB's jurisdiction. Section 1395*oo*(d) is titled "Decisions of Board" and it does grant the PRRB very broad powers to review cost reports. There's a big difference, however, between what a reviewing body has power to do once a cost report is properly before it on appeal and what appeals are proper in the first place. Subsection (d) defines the PRRB's powers only "once it obtains jurisdiction pursuant to subsection (a)." *Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399, 406, 108 S.Ct. 1255, 1259, 99 L.Ed.2d 460 (1988). It has no bearing on a provider's right to invoke the PRRB's jurisdiction.

The PRRB's jurisdiction is defined entirely by subsection (a) and extends only to a "final determination" with which the provider is dissatisfied. The only final determinations in this case were the revisions in the first and second revised NPRs. But French Hospital doesn't, nor could it, claim to be dissatisfied with those revisions: The intermediary reopened its original NPR only to reimburse malpractice insurance costs and, after the second revised NPR, the hospital was reimbursed for all of these costs. The powers subsection (d) grants the PRRB with respect to cost reports properly before it thus have no application to this case; French Hospital simply didn't invoke the PRRB's jurisdiction to review its cost report.

The majority overlooks this point and deems subsection (d) some kind of supplemental jurisdictional provision that, left unchecked, would give providers an unbridled right to demand PRRB review for any new gripes or ideas they may have about any cost report. Maj. op. at 1417–1419. Having

roused a phantom dragon, the majority next forges a phantom sword to slay it: an administrative regulation that supposedly reigns in powers Congress foolishly granted the PRRB. *Id.* The regulation cited, 42 C.F.R. § 405.1889, doesn't, of course, pretend to such a feat. Section 1889 deals with what may be appealed, not with what the PRRB may do with an appeal properly lodged before it. If a provider successfully invokes the PRRB's jurisdiction under subsection 1395oo(a), the Secretary can't (nor has she tried to) restrict the powers Congress gave the PRRB. That we follow the Secretary's interpretation in deciding whether the PRRB has jurisdiction under the statute doesn't mean the Secretary can regulate away the statutory consequences of jurisdiction.

None of this makes any difference today because we hold that the PRRB didn't have jurisdiction. In the next case, however, a provider may validly invoke the PRRB's jurisdiction over a revised NPR. Will the majority's holding prevent the PRRB from exercising the powers Congress granted it? Perhaps not, since this Court has no more power than does the Secretary to amend statutes. Still, even a fundamental mistake, backed by the force of stare decisis, is difficult to correct.

A number of similar cases will probably come before this and other circuits as HCFA Ruling 89–1 undoubtedly caused the reopening of many old cost reports. Courts deciding these cases shouldn't hesitate to reach the same result we do today. They should, however, think twice before following the majority as it hacks blindly at the governing statute to escape from an imaginary thicket of misinterpreted law.